[Cite as *State v. Velez*, 2016-Ohio-2875.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 14CA010683 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AMANDA N. VELEZ | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 12CR085465 |

DECISION AND JOURNAL ENTRY

Dated: May 9, 2016

CARR, Judge.

{¶1} Appellant, Amanda Velez, appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} On September 13, 2012, the Lorain County Grand Jury indicted Velez on one count of unlawful sexual conduct with a minor. Velez pleaded not guilty to the charge at arraignment and the matter proceeded to trial. During the first trial, Velez successfully moved for a mistrial based on improper testimony offered by the State. A second trial commenced in August 2014, and the jury found Velez guilty of the sole count in the indictment. The trial court imposed an eight-month prison sentence. Velez was also classified as a Tier II Sex Offender.

{¶3} On appeal, Velez raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE CONVICTION OF DEFENDANT-APPELLANT FOR UNLAWFUL SEXUAL CONDUCT WITH A MINOR IN VIOLATION OF R.C. 2907.04(A) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} In her sole assignment of error, Velez contends that her conviction for unlawful sexual conduct with a minor was against the weight of the evidence. This Court disagrees.

{¶5} Velez was convicted under R.C. 2907.04(A), which states, "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less then sixteen years of age, or the offender is reckless in that regard." "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A)

{¶6} Velez argues that the weight of the evidence suggests that she did not engage in sexual conduct with the victim, L.A. Velez contends that L.A.'s story was inconsistent throughout the course of the investigation, and that she appeared to be swayed by pressure from family and law enforcement.

{¶7} When a defendant argues that her convictions were contrary to the weight of the evidence, this court must review all of the evidence before the trial court:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶8} The evidence at trial showed that L.A. met Velez in 2011, during the summer after L.A. completed seventh grade. At that time, L.A. was thirteen years old and Velez was seventeen years old. L.A. and Velez grew closer when the new school year commenced. They texted each other during L.A.'s eighth grade trip to Washington D.C., and Velez presented L.A. with flowers upon her return from the trip. In December 2011, around the time when Velez turned eighteen, the relationship shifted into a different phase. L.A.'s father discovered a sexually explicit text message between L.A. and Velez on L.A.'s phone. Though L.A.'s parents forbade her from maintaining her relationship with Velez, L.A. and Velez continued to see each other. Velez continued to give L.A. gifts such as sweatshirts, flowers, and teddy bears. Looking back on that time, L.A. testified that it was an "abusive" relationship in that Velez engaged in "controlling behavior," particularly when L.A. attempted to break up with Velez. When L.A. tried to end the relationship, Velez threatened to have friends beat up L.A.

{¶9} In April 2012, L.A.'s friends, A.H. and S.D., helped convince L.A.'s parents that she was attending an innocuous slumber party. In actuality, L.A. was attending a party with Velez. Despite the fact that there was alcohol at the party, L.A. testified that she had a clear recollection of that night. When L.A. and Velez were watching a movie, Velez grabbed L.A.'s

hand and led her upstairs to A.H.'s bedroom. They started kissing and Velez pulled off L.A.'s clothes. L.A. testified that when they lay down on the bed, Velez inserted her fingers into L.A.'s vagina. L.A. further testified that Velez proceeded to insert her tongue into L.A's vagina. L.A. reciprocated with respect to digital penetration but she was unwilling to perform oral sex on Velez. While this caused Velez to become angry, L.A. and Velez slept in the same bed that night. At the time of the incident, L.A. was thirteen years old and Velez was eighteen years old. The following month, L.A.'s parents found out about her ongoing relationship with Velez. L.A.'s parents called the police and L.A. gave a written statement detailing the sexual conduct with Velez. The State introduced photographs evidencing a sexting conversation between L.A. and Velez that occurred in May 2012. L.A. testified that the text messages pertained to their plans to get together at Velez' house and have sex.

{¶10} The parties presented ample evidence regarding L.A.'s credibility, as well as potential influences on L.A. throughout the course of the investigation. The sole defense witness, A.H., testified that L.A. and Velez were never alone in A.H.'s bedroom on the night of the April 2012 party. A.H.'s testimony was contradicted by the testimony of S.D., who stated that L.A. and Velez were, in fact, alone in A.H.'s bedroom. L.A. testified that when Velez learned that a police investigation was underway, Velez urged L.A. to "make her look as innocent as possible." Thereafter, during a videotaped interview with Detective Mark Pickering, L.A stated that her parents pressured her into giving the written statement and that she did not want Velez to get in trouble. During a subsequent interview with Detective Pickering, however, L.A. reaffirmed her initial story and stated that she and Velez had engaged in sexual conduct. Though she acknowledged that her parents were very upset about her relationship with Velez, L.A. testified that she was truthful in her written statement and the second interview. Detective

Pickering admitted that, during his conversations with L.A., he remarked that a parent could see a romantic relationship between two females as a "very strange thing." Nonetheless, Detective Pickering maintained that his personal views as a parent did not color the investigation. As these events were unfolding, Velez gave L.A. an iPod as a birthday gift. The note function of the iPod contained a message from Velez that stated, in part, "baby our story is good. We have nothing to worry about if you stick to it."

{¶11} After a thorough review of the record, it is apparent that the evidence presented at trial does not weigh heavily against conviction. According to L.A.'s testimony at trial, Velez engaged in sexual conduct with L.A. at the April 2012 party. The State also presented text messages suggesting that Velez and L.A. were sexually active. While Velez emphasizes that L.A.'s story wavered throughout the course of the investigation, we note that the trier of fact was in the best position to evaluate the credibility of the witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the jury chose to believe certain witnesses' testimony. *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16 citing *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, where there is considerable evidence of the defendant's guilt, we cannot conclude that this is the exceptional case where the trier of fact clearly lost its way.

{¶12} Velez' assignment of error is overruled.

III.

{¶13} Velez' assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

6

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MICHAEL J. DUFF, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.