[Cite as *Grafton v. Ortiz*, 2016-Ohio-7539.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO, VILLAGE OF
GRAFTON

    Appellee

    v.

ROSEMARY ORTIZ

    Appellant

C.A. No.    15CA010772


APPEAL FROM JUDGMENT
ENTERED IN THE
ELYRIA MUNICIPAL COURT
COUNTY OF LORAIN, OHIO
CASE No.    2014CRB00817

DECISION AND JOURNAL ENTRY

Dated: October 31, 2016

---

CARR, Presiding Judge.

{¶1} Defendant-Appellant, Rosemary Ortiz, appeals from her conviction in the Elyria Municipal Court. This Court affirms.

I.

{¶2} Ortiz and Dawn Yager were friends for more than 14 years before the facts giving rise to this incident occurred. On March 23, 2014, Ortiz drove to Yager's residence to speak with her about certain violations of her lease agreement. At the time, Yager was Ortiz' tenant, and the two had been having disagreements about various issues with the rental property. Once Ortiz arrived, she and Yager had a heated argument. According to Yager, Ortiz briefly choked her during the incident and left red marks on her neck. According to Ortiz, she never choked Yager, but Yager briefly grabbed her. After Ortiz left Yager's residence, both women contacted the police.

{¶3}  Subsequently, Yager filed a criminal complaint against Ortiz for misdemeanor assault.  The matter proceeded to a bench trial, but, at the conclusion of the State's case, Ortiz decided to plead no contest.  The court halted the trial, accepted Ortiz' plea, and set the matter for sentencing.  Before sentencing could occur, however, Ortiz retained new counsel and filed a motion to withdraw her plea.  The court ultimately allowed her to do so, and the trial resumed.  At its conclusion, the court found Ortiz guilty of assault.  The court sentenced her to a fine, suspended sentence, and two years of probation.

{¶4}  Ortiz now appeals from her conviction and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5}  In her sole assignment of error, Ortiz argues that her assault conviction is against the manifest weight of the evidence.  We disagree.

{¶6}  When a defendant argues that her conviction is against the weight of the evidence, this court must review all of the evidence before the trial court.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the

conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶7} "No person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(A). Physical harm "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Whoever commits the foregoing offense is guilty of assault. R.C. 2903.13(C)(1).

{¶8} Yager testified that she and Ortiz were friends for 15 years before she found herself looking for a temporary residence and became Ortiz' tenant. She testified that, during the tenancy, there were issues with the rental property, and she had to contact a building inspector on at least one occasion. According to Yager, she and Ortiz would have discussions about issues with the house, but there were no actual arguments between them. Yager described Ortiz as just being "very upset all the time about everything."

{¶9} Yager testified that her lease with Ortiz was set to expire on April 1, 2014, but that, on March 23rd, Ortiz unexpectedly knocked on her door. She testified that Ortiz was upset because she (Yager) had installed a satellite dish on the roof. According to Yager, Ortiz was yelling when she came into the house and increasingly became more upset as they spoke. As Yager attempted to calm Ortiz, Ortiz walked upstairs and asked Yager about an issue with the plumbing. Yager testified that, because Ortiz was still very upset, she instructed her to take a deep breath and tried to give her a hug. She testified that, as she was giving Ortiz a hug, Ortiz pushed her away. Ortiz then reached out with both hands and choked her around the neck for a few seconds. Yager described the incident as very painful and stated that Ortiz was pressing her thumbs into Yager's trachea so that she couldn't breathe. Yager testified that Ortiz released her

after a few seconds. Yager then cried out to her boyfriend for help. After her boyfriend emerged from a nearby bedroom, Ortiz left the house, and Yager called the police. Yager testified that the incident left her throat red, but not bruised. She further testified that the discomfort she experienced in her neck caused her to have an x-ray at the hospital the following day.

{¶10} Frederick Cichocki, Yager's former boyfriend, testified that he was visiting Yager on March 23rd when Ortiz arrived. He testified that Yager and Ortiz had been arguing about the condition of the home, so he went upstairs to one of the bedrooms to avoid seeing Ortiz. According to Cichocki, he was watching television when he heard Yager screaming for help because Ortiz was choking her. Cichocki testified that, by the time he got to Yager, Ortiz had already walked downstairs, but he could see red marks on Yager's neck. Cichocki stated that the red marks faded after about an hour or two.

{¶11} Sergeant Kenneth Jake testified that he left the station on March 23rd to respond to a call about a possible assault at Yager's residence. He testified that his dispatch included a description of Ortiz' vehicle, so, rather than drive directly to Yager's residence, he first drove around her neighborhood looking for a vehicle that matched that description. As Sergeant Jake was driving, dispatch notified him that Ortiz had come to the police station. Accordingly, he decided to return to the station and speak to Ortiz.

{¶12} Sergeant Jake testified that Ortiz was very upset when he arrived and interested in filing a criminal damaging complaint against Yager. Although he informed Ortiz that Yager had accused her of assault, he testified that Ortiz was focused on the alleged damage to her property. Sergeant Jake testified that he ultimately informed Ortiz he would talk to her again, if necessary, after he spoke with Yager. Sergeant Jake estimated that he was with Ortiz at the police station for about 30 to 40 minutes.

{¶13} Following his talk with Ortiz, Sergeant Jake drove to Yager's residence and took her statement. Yager told Sergeant Jake that she and Ortiz had argued before the situation escalated and Ortiz had choked her for approximately two seconds. Sergeant Jake testified that he did not observe any redness on Yager's neck by the time he spoke to her, so he did not note any visible injury in his report. He did testify, however, that he spoke with Cichocki and that Cichocki reported having seen red marks on Yager's neck after her argument with Ortiz.

{¶14} Sergeant Jake testified that he called Ortiz again after Yager signed the complaint for assault. While speaking with Sergeant Jake on the phone, Ortiz admitted that she and Yager had engaged in a "pretty heated" argument. Sergeant Jake testified that, when he asked Ortiz if she had choked Yager, Ortiz admitted that she might have come into contact with Yager's neck. Ortiz said that, after Yager tried to hug her, she pushed Yager away and "that is when she thought maybe she pushed her against her neck."

{¶15} Ortiz testified that she began renting her property to Yager in October 2013 and that, during the tenancy, Yager constantly complained. She testified that Yager's lease was set to expire on April 1st, but that Yager nonetheless installed a satellite dish on the roof that Ortiz had just replaced. According to Ortiz, she went to see Yager on the day of the incident to hand her a lease violation notice. She testified that she then planned on driving to the police station to file a criminal damaging complaint against Yager.

{¶16} Ortiz testified that, after Yager answered the door, she handed Yager the lease violation notice and told her to read it. Yager was reading the lease violation notice when she suddenly insisted that Ortiz follow her upstairs. Ortiz stated that she walked up the steps and started to ask Yager again why she would install a satellite dish on a brand new roof. According to Ortiz, Yager then quickly stepped forward, reached behind Ortiz' neck, pulled her closer, and

started backing her towards the railing. Ortiz testified that, while Yager did so, she said: "honey, I have the right to watch TV."

{¶17} Ortiz stated that she was able to twist away from Yager and yelled that Yager needed to let her go. According to Ortiz, she remained nervous during the rest of their encounter because she did not know what Yager might do next. She testified that Yager ultimately ran down the hall and began speaking to Cichocki. She then heard Yager ask Cichocki "what they were going to do with [her]" and Cichocki suggest that they call the police. Ortiz stated that, at that point, she turned to leave, but, as she did so, she made a comment suggesting that Yager's eldest child might not have been fathered by her husband. She testified that the remark infuriated Yager and caused her to start screaming. Ortiz then left the house and drove to the police station. She testified that, during her encounter with Yager, she never put her hands on her and never tried to harm her.

{¶18} Ortiz argues that her assault conviction is against the manifest weight of the evidence because the trial judge lost his way when he chose to believe that she assaulted Yager. She argues that Sergeant Jake never observed any red marks on Yager's neck and that, because he was in a relationship with Yager, Cichocki had a reason to lie on her behalf. Further, she notes that Yager embellished her version of the events at trial, claiming that she remembered additional details about the attack that she failed to mention to Sergeant Jake. According to Ortiz, the evidence tends to show that Yager fabricated the assault here because she was angry about their lease dispute and angry that Ortiz had insulted her when leaving the house.

{¶19} Having reviewed the record, we cannot conclude that the trial judge lost his way when he found Ortiz guilty of assault. Both Yager and Cichocki testified that Yager had red marks on her neck after her encounter with Ortiz, and even Ortiz admitted to Sergeant Jake that

her hands may have come into contact with Ortiz' neck during their "heated" argument. Although Sergeant Jake did not see the red marks, there was testimony that he did not observe Yager directly after the incident. Instead, he had to drive back to the station to meet Ortiz, speak with Ortiz for 30 to 40 minutes, and then drive to Yager's residence. The trial court could have concluded that any red marks on Yager's skin faded by the time Sergeant Jake arrived.

{¶20} Although Cichocki and Yager were dating at the time of this incident, Cichocki testified that their relationship ended before trial. Accordingly, the court reasonably could have concluded that Cichocki had no reason to lie on Yager's behalf. In essence, the court was presented with two conflicting versions of the events here and had to make a credibility determination. The trial court was in the best position to do so, and this Court will not overturn its verdict simply because it chose to believe the State's version of the events. *See State v. Velez*, 9th Dist. Lorain No. 14CA010683, 2016-Ohio-2875, ¶ 11. Upon review, this is not the exceptional case where the trier of fact clearly lost its way. *See Otten*, 33 Ohio App.3d at 340. Accordingly, Ortiz' sole assignment of error is overruled.

III.

{¶21} Ortiz' sole assignment of error is overruled. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT


WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

BRIAN J. DARLING, Attorney at Law, for Appellant.

MATTHEW MISHAK, Attorney at Law, for Appellee.