[Cite as *State v. Pittman*, 2021-Ohio-1051.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHRISTIAN PITTMAN

    Appellant

C.A. No.    29705

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 18 06 2069(A)

DECISION AND JOURNAL ENTRY

Dated: March 31, 2021

HENSAL, Judge.

{¶1} Christian Pittman appeals his convictions for murder and tampering with evidence from the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} This appeal stems from the shooting death of the victim, whom Mr. Pittman claimed to have shot in self-defense after he stole cash from the victim's apartment. A grand jury indicted Mr. Pittman on one count of aggravated murder, two counts of murder, one count of aggravated robbery, one count of aggravated burglary, and one count of tampering with evidence. Each count except the tampering-with-evidence count contained an accompanying firearm specification. Mr. Pittman pleaded not guilty, and the matter proceeded to a jury trial.

{¶3} At trial, there was no dispute that Mr. Pittman shot and killed the victim, and that he did so after he stole cash from the victim's apartment, which the victim shared with his girlfriend, M.A.B. What was in dispute was whether Mr. Pittman acted in self-defense.

{¶4}    According to M.A.B.'s testimony at trial, she and the victim sold snacks, cigarettes, and marijuana out of their apartment.  In the early evening of June 5, 2018, the victim left the apartment to drive his cousin somewhere.  While he was gone, a woman came to the apartment and purchased $10.00 worth of marijuana.  A short time after that woman left, M.A.B. heard a knock at the apartment door.  When she opened the door, she saw Mr. Pittman, who entered the apartment and asked to buy $10.00 worth of marijuana.  M.A.B. felt uncomfortable and told Mr. Pittman that he would have to wait until the victim got home.  Mr. Pittman then asked to buy a few cigarettes from her.  At that point, another man entered the apartment.  M.A.B. still felt uncomfortable, so she opened the kitchen drawer that she kept cash in and removed the cash for safekeeping.  As soon as she did, Mr. Pittman jumped on her back and she fell to the ground.  M.A.B. felt something dig into her side as she curled into a ball, clutching the cash while Mr. Pittman tried to pull it out of her hands.  She eventually let go of the cash and started yelling for help.  Both men then ran out of the front door of the apartment.  As they were leaving, M.A.B. noticed that Mr. Pittman was holding a gun.

{¶5}    M.A.B. then got up and went to the front door to see which way the men ran.  She saw both men headed toward a stairwell, and the victim – who was returning home – chasing after them.  M.A.B. went back into the apartment because her 8-month-old son was sleeping inside.  She then heard several gunshots.  M.A.B. went onto her balcony and saw the victim lying face down in a ravine near the apartment building.  Mr. Pittman was standing over him.  Mr. Pittman then ran off, and M.A.B. called the police.

{¶6}    According to Mr. Pittman's testimony at trial, he went to the victim's apartment with another man with the intention of robbing M.A.B.  He admitted that he brought a gun with him, and that he asked the woman who had purchased marijuana from M.A.B. immediately prior

to the incident whether the victim was inside. That woman told him the victim was not inside, so Mr. Pittman proceeded with his plan to rob M.A.B. He testified that the other man fought with M.A.B. over the cash, and that M.A.B. fell to the ground on her own; no one jumped on her back. He testified that the other man dropped the cash on the way out, so he (Mr. Pittman) picked it up and ran out of the apartment.

{¶7} Mr. Pittman testified that, as he was fleeing, he fell down a hill a few times, got up, and noticed that the victim was chasing him. He testified that the victim jumped on his back, tried to fight him, and struggled to take the cash out of his hand. Mr. Pittman indicated that he was trying to get away, but the victim had a strong hold on him. He then saw that the victim had a gun. Mr. Pittman heard a gunshot and began shooting at the victim because he feared for his life. After shooting the victim, he picked up both guns, ran into the nearby woods, took off all of his clothes except his boxers because he was covered in blood, realized he had been shot in the right buttock, and called someone to pick him up. When that person arrived, Mr. Pittman left the clothes and the guns behind and headed toward Mercy Medical Center in Canton. He admitted that he chose to go to Mercy Medical Center in Canton instead of an Akron hospital because he wanted to avoid being connected with the shooting.

{¶8} When he arrived at Mercy Medical Center, Mr. Pittman lied to a Canton police officer, telling him that he had been shot in Canton. He told the officer that he was walking down an alley when three men jumped out of a car and fired two shots at him, one of which struck him in the right buttock. He told the officer that he had no idea who the men were. After that, Mr. Pittman told a detective with the Canton police department that he had been shot while at a friend's house.

{¶9} The Canton police officer who initially spoke with Mr. Pittman asked dispatch to contact local agencies to find out if anyone had reported a shooting. The Akron police confirmed that a shooting had been reported, and that Mr. Pittman was a suspect. The Akron police then arrested Mr. Pittman at Mercy Medical Center and transported him back to Akron.

{¶10} During his interview with a detective from the Akron police department, Mr. Pittman told the detective that he went to the victim's apartment building because he knew someone in that building sold individual cigarettes, and he wanted to buy some. He asked a man outside of the apartment building which apartment sold the cigarettes, and that man led him to the victim's apartment. Mr. Pittman then went into the victim and M.A.B.'s apartment to buy cigarettes, and someone came in behind him and robbed M.A.B., so he (Mr. Pittman) ran. Mr. Pittman insisted that he did not have a gun, and that he did not rob M.A.B. The detective then told Mr. Pittman that there was surveillance video from the apartment building showing him fleeing the apartment with a gun in one hand and cash in the other. Mr. Pittman initially indicated that it was not a gun in his hand, it was a cell phone, and that it was his own cash in his hand. He eventually acknowledged that he was holding a gun, but stated that it was the other man's gun, and that he only picked it up because the man had dropped it. He repeatedly insisted that he had nothing to do with the robbery, but that the victim chased and shot him because the victim must have thought he did. He also repeatedly insisted that he never shot the victim.

{¶11} At trial, Mr. Pittman admitted that the entire story he told the detective was lie, and so was the story he told the Canton police at Mercy Medical Center. He testified that he lied because he was scared, nervous, upset, and could not believe what had happened.

{¶12} Dr. Kohler, the Chief Medical Examiner at the Summit County Medical Examiner's Office, testified regarding the victim's cause of death, which was ruled a homicide. She indicated

that the victim sustained 4 gunshots wounds, including one to the back. Officers who responded to the scene, as well as to Mercy Medical Center, testified as to the statements they obtained and the evidence they collected. Among the evidence collected was surveillance video from the hallway of the apartment building showing Mr. Pittman running from the victim's apartment with a gun in one hand and cash in the other. The surveillance video also showed the victim, who was holding his cell phone in one hand and a can of Mountain Dew in the other, running down the hallway after the men. While the video did not capture the actual shooting, at no point did it show the victim with a gun. According to M.A.B., the victim did not own a gun. The police did not recover a gun or shells casings from the scene. The police did, however, recover torn dollar bills near the victim's body, which matched torn dollar bills found in the car that transported Mr. Pittman to Mercy Medical Center.

{¶13} The jury ultimately found Mr. Pittman guilty of felony murder in violation of Section 2903.02(B) with the predicate offense of aggravated robbery and/or aggravated burglary, aggravated robbery in violation of Section 2911.01(A)(1), aggravated burglary in violation of Section 2911.11(A), and tampering with evidence in violation of Section 2921.12(A)(1), as well as the accompanying firearm specifications. The jury found Mr. Pittman not guilty of the remaining counts. He now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE VERDICT OF THE TRIAL COURT CONVICTING APPELLANT OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WAS NOT ACTING IN SELF DEFENSE[.]

{¶14} In his first assignment of error, Mr. Pittman argues that his conviction for murder was against the manifest weight of the evidence because the State failed to prove beyond a reasonable doubt that he did not act in self-defense. This Court disagrees.

{¶15} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶16} Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. This includes instances when a jury rejects a defendant's self-serving testimony that he or she acted in self-defense. *See State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15 (acknowledging that a jury is free to reject a defendant's self-serving testimony, and that doing so does not render a conviction against the

manifest weight of the evidence); *State v. Miller*, 3d Dist. Marion No. 9-18-02, 2018-Ohio-3433, ¶ 41 (noting that the defendant's "self-defense claim rested essentially entirely on her own self-serving testimony[,]" and concluding that the jury could have found that testimony not credible). We now turn to the law as it relates to self-defense.

{¶17} "Self-defense requires that a defendant 'was not at fault in creating the situation giving rise to the affray; * * * [had] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and * * * [did] not * * * violate[ ] any duty to retreat or avoid the danger.'" (Alterations sic.) *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 9, quoting *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. On March 28, 2019, amendments to Section 2901.05 went into effect that changed the burden of going forward and burden of proof as to self-defense. The amendments changed self-defense from an affirmative defense that a defendant must prove to a burden that the prosecution must carry to show that the defendant did not use force in self-defense. R.C. 2901.05(A), (B)(1). "Consequently, once there is evidence presented at trial that tends to support that the defendant acted in self-defense, the State must disprove one of the elements of self-defense beyond a reasonable doubt." *Williams* at ¶ 10. "In other words, in this case, the prosecution was required to disprove self-defense by proving beyond a reasonable doubt that [Mr. Pittman] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger." *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶18} Here, Mr. Pittman argues that the theft offense was complete when he ran from the apartment, that the victim – acting as the initial aggressor at that point – shot him while he was

retreating, and that he (Mr. Pittman) began shooting at the victim because the victim shot him, and he believed he was in imminent danger of death or great bodily harm. All of this required the jury to believe that the victim shot Mr. Pittman first, yet there was no evidence – other than Mr. Pittman's testimony – indicating that the victim had a gun and shot Mr. Pittman, let alone shot Mr. Pittman first. While Mr. Pittman testified that the victim had a gun, M.A.B. testified that the victim did not own a gun, and neither gun (if, in fact, the victim had a gun) was ever recovered. The jury was not required to believe that, just because Mr. Pittman was shot, he had to have been shot by the victim first, nor was it required to believe his self-serving testimony that he shot the victim because he feared for his life.

{¶19} As previously noted, the evidence presented at trial indicated that Mr. Pittman fled the victim and M.A.B.'s apartment with cash in one hand and a gun in another, shot the victim (who, according to the State, was unarmed) multiple times, including once in the back, went to Mercy Medical Center in Canton (as opposed to an Akron hospital) to avoid being connected with the shooting, lied to the police multiple times, and claimed to have acted in self-defense for the first time at trial. The jury was free to find Mr. Pittman's testimony regarding self-defense not credible, and instead believe the State's version of the events. His conviction is not against the manifest weight of the evidence simply because the jury chose to do so. *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13 ("We will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version."). Mr. Pittman's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO
DISMISS THE CHARGE OF TAMPERING WITH EVIDENCE AS THE
INDICTMENT WAS DEFECTIVE[.]

{¶20} In his second assignment of error, Mr. Pittman argues that the trial court erred by denying his motion to dismiss the charge of tampering with evidence because the indictment was defective. This Court disagrees.

{¶21} Criminal Rule 12(C)(2) provides that objections based on defects in the indictment must be raised before trial. More specifically, they must be made "within thirty-five days after arraignment or seven days before trial, whichever is earlier." Crim.R. 12(D). Failure to do so results in forfeiture of the error. Crim.R. 12(H); *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 46, citing Crim.R. 12(C)(2). As this Court has stated:

> Generally, this Court reviews a ruling on a pretrial motion to dismiss criminal charges under a de novo standard of review. *State v. Saxon*, 9th Dist. No. 09CA009560, 2009-Ohio-6905, ¶ 5. Yet, it is within a trial court's discretion to deny a pretrial motion to dismiss an indictment on the basis that the motion is untimely. *State v. Dunning*, 9th Dist. No. 06CA0087-M, 2007-Ohio-7039, ¶ 5-6. Crim.R. 12 limits the time within which a defendant may file a motion to dismiss based on defects in the indictment, but a trial court may allow an untimely motion "for good cause shown." Crim.R. 12(D), (H). *Accord State v. Passon*, 2d Dist. No. 90CA44, 1992 WL 235730, *3 (Sept. 18, 1992). That decision is then reviewed under an abuse of discretion standard of review. *Dunning* at ¶ 5-6. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*State v. Ross*, 9th Dist. Lorain No. 09CA009742, ¶ 12.

{¶22} On the first day of trial, defense counsel orally moved to dismiss the tampering-with-evidence count on the basis that the indictment did not indicate what evidence Mr. Pittman allegedly tampered with. Defense counsel did not address or explain why the motion was not made within the time limitations set forth in Criminal Rule 12(D). The State opposed the motion,

arguing that defense counsel should have requested a bill or particulars, and also arguing that each case that has addressed this issue has concluded that the indictment was not defective. Specifically, the State cited *State v. Parra*, 8th Dist. Cuyahoga No. 95619, 2011-Ohio-3977, ¶ 40 (analyzing the issue under a plain-error standard and concluding that the indictment was not defective on the basis that it did not identify what evidence was allegedly tampered with), *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 10 (concluding that the indictment, which tracked the language of the statute, was not defective on the basis that it did not identify what evidence was allegedly tampered with, and noting that the bill of particulars eliminated any confusion on the issue), and *State ex rel. Smith v. Mackey*, 11th Dist. Ashtabula No. 2004-A-0080, 2005-Ohio-825, ¶ 8 (concluding that the indictment was not defective on the basis that it did not identify what evidence was allegedly tampered with, and noting that trial counsel could have requested a bill of particulars). The trial court denied the motion without explaining its reasoning.

{¶23} On appeal, Mr. Pittman argues that the cases cited by the State are distinguishable, and that requesting a bill of particulars would have been futile because such requests are routinely denied in light of Summit County's open-file discovery. This Court has acknowledged that a bill of particulars is not required if the prosecutor permitted a full examination of his or her file by defense counsel. *State v. Betts*, 9th Dist. Summit Nos. 29575, 29576, 29577, 2020-Ohio-4800, ¶ 40. In doing so, this Court, citing the Ohio Supreme Court, has stated that "[a]lthough 'the denial of a timely request for a bill of particulars should never occur,' the more important question is whether the defendant suffered 'prejudice as a consequence of the denial * * *.'" *Id.*, quoting *State v. Chinn*, 85 Ohio St.3d 548, 569 (1999).

{¶24} While the trial court did not explain its reasoning for denying Mr. Pittman's motion to dismiss, we conclude that the motion – which was made on the first day of trial – was untimely

and, therefore, the trial court did not err by denying it. Even if it was timely, we are unpersuaded by Mr. Pittman's argument that the cases cited by the State are distinguishable, and by his assertion that requesting a bill of particulars would have been futile. Even if a request for a bill of particulars would have been denied, that is not per se reversible error. *See State v. Prince*, 9th Dist. Summit No. 27651, 2016-Ohio-4670, ¶ 10 (noting that the State's failure to provide a bill of particulars is not per se reversible error, and that the defendant must establish that he or she suffered actual prejudice). In light of the arguments presented, we conclude that Mr. Pittman has not established that the trial court committed reversible error when it denied his motion to dismiss the tampering-with-evidence count. Mr. Pittman's second assignment of error is overruled.

III.

{¶25} Mr. Pittman's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.