[Cite as *State v. Walter*, 2022-Ohio-1982.]

STATE OF OHIO        )           IN THE COURT OF APPEALS
                     )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

STATE OF OHIO                        C.A. No.     20AP0020

      Appellee

      v.                              APPEAL FROM JUDGMENT
                                  ENTERED IN THE
JEFFREY WALTER                WAYNE COUNTY MUNICIPAL COURT
                                  COUNTY OF WAYNE, OHIO
      Appellant               CASE No.     2020 CR-B 000151

DECISION AND JOURNAL ENTRY

Dated: June 13, 2022

HENSAL, Judge.

{¶1}    Jeffrey Walter appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    Mr. Walter was charged with three counts of domestic violence and two counts of disorderly conduct related to an altercation with his girlfriend, J.B.'s, 12-year-old son ("Son") and 13-year-old daughter ("Daughter"). He pleaded not guilty, and the matter proceeded to a bench trial. Son, Daughter, and Deputy Ben Rubenstein with the Wayne County Sheriff's Office testified on behalf of the State. At the State's request, the trial court called J.B. as the court's witness. Mr. Walter then testified on his own behalf.

{¶3}    The trial court found Mr. Walter guilty of two counts of domestic violence and one count of disorderly conduct. On appeal, Mr. Walter challenges his convictions for domestic

violence only. Those counts related to allegations that Mr. Walter slapped Daughter and choked Son. The following testimony was adduced at trial.

{¶4} While the witnesses' testimony varied at trial, the following facts were not in dispute. J.B. grew up in Medina County but moved to California, where she lived with Son and Daughter. Mr. Walter lives in Wayne County. J.B. and Mr. Walter knew each other from childhood and reconnected through Facebook. They began dating, and J.B. moved from California to Wayne County in 2019 with Son and Daughter to live with Mr. Walter at his rental house.

{¶5} On February 8, 2020, several months after J.B., Son, and Daughter moved to Ohio, the underlying incident took place. It occurred one evening after J.B., Son, and Daughter returned from Son's hockey game. After dinner, Mr. Walter asked Son and Daughter to get firewood from near the detached garage and to stack it by the sliding glass door. This was one of their chores, and they had done it in the past. Daughter was initially reluctant because it was cold outside, but she and Son went outside and started stacking the firewood. J.B. felt badly for Son and Daughter, so she went outside and helped them. Son, Daughter, and J.B. stacked firewood for about 15 minutes while Mr. Walter remained inside watching television. What happened next varied among the witnesses.

{¶6} Son testified that when he, Daughter, and J.B. finished stacking the firewood, all three of them started to walk back into the house. Daughter entered the house first, followed by Son, and then J.B. Son testified that Mr. Walter was waiting for them at the door, and that Mr. Walter slapped Daughter across the face as soon as Daughter walked into the house. Son then positioned himself between Mr. Walter and Daughter, and Mr. Walter grabbed him by the throat with both hands and choked him. Son was able to get Mr. Walter's hands off him, and J.B. and

Mr. Walter started yelling at each other. Mr. Walter then told them to get out of his house, so they started packing their belongings.

{¶7} Son testified that Daughter called the police, and that he, Daughter, and J.B. got into the car and drove to IGA, which was a few minutes away. The police met them at IGA, and they all gave statements to the police. In his written statement, Son indicated that Mr. Walter slapped Daughter, and that Mr. Walter grabbed his throat with two hands and choked him. Son testified that an ambulance arrived, but that he was not taken to the hospital. Son also testified that neither he, nor Daughter, swung at or hit Mr. Walter. He further testified that Mr. Walter had been drinking liquor that evening. When presented with pictures of his neck taken on the night of the incident, Son indicated that the marks on his neck had gone away between the time Mr. Walter grabbed his neck and the time the pictures were taken, which was about 45 minutes later.

{¶8} According to Daughter, she did not want to move the firewood because she had just showered, her hair was wet, and it was cold outside. She eventually went outside to help Son, and J.B. also came outside to help. Daughter testified that she tossed some of the firewood down, but that she did not throw it at the house. As they walked back into the house, Mr. Walter gave her "a little slap on [her] face" with his opened hand. Son then stepped in front of her and shoved Mr. Walter away from her. Mr. Walter then grabbed Son by the shirt and pushed him against the wall. Daughter testified that she did not see Mr. Walter grab Son's neck, and that she did not think Mr. Walter choked Son.

{¶9} Daughter testified that Mother went to the garage and called the police, and that they packed their belongings and met the police at IGA. In her written statement to the police, Daughter indicated that Mr. Walter grabbed her face and slapped her, and that Son stepped in

between her and Mr. Walter to protect her. Her written statement also indicated that Mr. Walter grabbed Son by the neck and choked him.

{¶10} When presented with her written statement, Daughter acknowledged that it was different than her testimony at trial. She testified that it all happened very fast, and that she now thinks Mr. Walter only grabbed Son by the shirt. She acknowledged that she was aware that Mr. Walter might go to jail as a result of the charges against him and testified that she and J.B. love Mr. Walter. When presented with a picture of her face taken on the night of the incident, Daughter acknowledged that the picture showed a red mark on her face, which was a result of being slapped. During the State's re-direct examination of Daughter, the prosecutor played a portion of Deputy Rubenstein's bodycam video wherein Daughter told Deputy Rubenstein that Mr. Walter grabbed her face and smacked her with about 70% force.

{¶11} According to J.B., she went outside to help her children bring in firewood because she felt badly for them. When she came back inside, Daughter was crying, and Mr. Walter was grabbing Son by the shirt collar. Mr. Walter told her that her kids were being disrespectful and ordered her to take her children and leave the house. She then went to her car, called the police, and told her children to pack their belongings. They then drove to IGA.

{¶12} In her written statement to the police, J.B. indicated that Mr. Walter grabbed Daughter by the face and slapped her, and that he grabbed Son by the neck with two hands. When presented with her written statement, J.B. indicated that she told the police that Mr. Walter grabbed Daughter's face and slapped her because that was what Daughter told her had happened. She also indicated that, by the time she came back into the house, Son was already up against the wall, and Mr. Walter was grabbing Son's shirt collar, not his neck.

**{¶13}** J.B. testified that she was still dating Mr. Walter at the time of trial, and that she did not want him to go to jail. She testified that she regretted calling the police and did not realize that it would result in Mr. Walter being charged with domestic violence.

**{¶14}** Deputy Rubenstein testified that he responded to IGA and spoke with J.B., Son, and Daughter. He testified that J.B. told him that Mr. Walter had been drinking, and that he choked Son and slapped Daughter. He also testified that he personally observed a red mark on Son's neck.

**{¶15}** Mr. Walter provided a different version of the events. According to him, Daughter did not want to stack the firewood, so she threw some of it at the house while he was sitting inside. Mr. Walter testified that he opened the door and told her not to come back in his house. When Daughter attempted to come back inside the house, he met her at the door, put his hand on her shoulder, and told her not to come inside. Mr. Walter testified that Daughter dropped to the floor and said he was hurting her. He then looked up and saw Son approaching him with his fists in the air. Mr. Walter testified that he put his hands out and Son hit his arms a few times. He then grabbed Son's shirt and started to push Son and Daughter out of the door. At that point, J.B. came inside and started yelling. Mr. Walter testified that he let Son go and told J.B. to take her kids and leave. Mr. Walter testified that he never slapped Daughter, and that he did not choke Son.

**{¶16}** As previously noted, the trial court found Mr. Walter guilty of two counts of domestic violence and one count of disorderly conduct. One of the domestic-violence counts related to Son, and the other count related to Daughter. On appeal, Mr. Walter challenges his convictions for domestic violence only, and raises three assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

WALTER'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In his first assignment of error, Mr. Walter challenges the sufficiency and the weight of the evidence presented at trial. It is well-established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 16(A)(7) of the Ninth District Court of Appeals ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"). Nonetheless, we exercise our discretion to consider the merits of Mr. Walter's combined assignment of error.

{¶18} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶19} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all

reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶20} Mr. Walter argues that his two domestic violence convictions under Section 2919.25(A) were not supported by sufficient evidence and/or were against the manifest weight of the evidence because: (1) the State failed to prove beyond a reasonable doubt that he did not act in self-defense when he pushed Son; (2) the evidence demonstrated that he was acting in loco parentis, and that he pushed Son and Daughter as a form of parental discipline, which is an affirmative defense to domestic violence; and (3) the witnesses provided inconsistent testimony. We will address each argument in turn, beginning with an analysis of the sufficiency of the evidence.

{¶21} Section 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Section 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." We note that Mr. Walter has not argued that Son and Daughter were not "household member[s]" under Section 2919.25(A).

{¶22} The State presented testimony from Son that Mr. Walter grabbed him by the neck with two hands and choked him. The State also presented the written statements of Son, Daughter,

and J.B., all of whom indicated that Mr. Walter grabbed Son by the neck, and slapped Daughter across the face. While Daughter's testimony at trial differed from her written statement, she still testified that Mr. Walter slapped her, and that this resulted in a red mark on her face. The State also played a portion of Deputy Rubenstein's bodycam wherein Daughter told him that Mr. Walter grabbed her face and smacked her. Additionally, Son testified that Mr. Walter's actions left a mark on his neck, and Deputy Rubenstein testified that he observed the mark on Son's neck. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of domestic violence proven beyond a reasonable doubt.

{¶23} We now turn to Mr. Walter's argument that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. This argument lacks merit. As this Court has stated,

> "Self-defense requires that a defendant 'was not at fault in creating the situation giving rise to the affray; * * * [had] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and * * * [did] not * * * violate[ ] any duty to retreat or avoid the danger.'" (Alterations sic.) *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 9, quoting *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. On March 28, 2019, amendments to Section 2901.05 went into effect that changed the burden of going forward and burden of proof as to self-defense. The amendments changed self-defense from an affirmative defense that a defendant must prove to a burden that the prosecution must carry to show that the defendant did not use force in self-defense. R.C. 2901.05(A), (B)(1).

*State v. Pittman,* 9th Dist. Summit No. 29705, 2021-Ohio-1051, ¶ 17. "Consequently, once there is evidence presented at trial that tends to support that the defendant acted in self-defense, the State must disprove one of the elements of self-defense beyond a reasonable doubt." *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10.

{¶24} Initially, we note that Mr. Walter did not assert self-defense at trial. Mr. Walter testified that, after he put his hand on Daughter's shoulder and told her not to come back into the

house, he looked up and saw Son approaching him with his fists in the air. Mr. Walter testified that he put his hands out and Son hit his arms a few times. According to him, he then pushed Son and Daughter toward the door. Even if Mr. Walter had raised the affirmative defense of self-defense at trial, we cannot say that this evidence, without more, tended to support that Mr. Walter acted in self-defense as defined above.

**{¶25}** Aside from generally asserting that he acted in self-defense in his merit brief, Mr. Walter has not argued that he was not at fault in creating the situation that gave rise to the affray, that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and that he did not violate any duty to retreat. *See Pittman* at ¶ 17. We, therefore, reject his argument as it relates to self-defense.

**{¶26}** Mr. Walter next argues that he pushed Son and Daughter toward the door as an act of parental discipline, claiming that he was acting in loco parentis. We reject this argument. Initially, we note that Mr. Walter did not raise the affirmative defense of parental discipline at trial, nor did he claim to be acting in loco parentis. *State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, ¶ 24 (concluding that parental discipline is an affirmative defense). His argument on appeal is supported by his own testimony that he shoved Son and Daughter, and ignores the evidence presented by the State that he slapped Daughter and choked Son. Relying on his own testimony, he concludes that he did not physically harm Son and Daughter, and that he was simply punishing disrespectful children.

**{¶27}** "In regard to parental discipline, the Ohio Supreme Court has held that R.C. 2919.25(A) does not preclude a parent from disciplining his child, but does prohibit a parent from causing ''physical harm' as that term is defined in [Section 2901.01(A)(3)].'" *State v. Clark*, 9th

Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 13, quoting *State v. Suchomski,* 58 Ohio St.3d 74, 75 (1991). "The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" *State v. Noggle*, 67 Ohio St.3d 31, 33 (1993), quoting *Black's Law Dictionary* 787 (6th Ed.1990); *see Faggs at* ¶ 10 (acknowledging that the domestic violence statute applies to persons acting in loco parentis).

**{¶28}** Mr. Walter has not directed this Court to anything in the record to support his position that he was acting in loco parentis. After reciting the relevant law, he summarily concludes – without any citations to the record – that he was acting in loco parentis and the affirmative defense of parental discipline applies. Moreover, his argument ignores the evidence presented by the State that he choked Son, which left a mark on his neck, and slapped Daughter, which left a red mark on her face. He has not explained how these injuries do not constitute "[p]hysical harm" as defined in Section 2901.01(A)(3). In short, even if Mr. Walter had raised this affirmative defense below, he has not established on appeal that it applies.

**{¶29}** Lastly, Mr. Walter argues that his convictions were against the manifest weight of the evidence because all four witnesses who were present at the time of the incident provided different accounts of what occurred. He asserts that Son testified that he choked his neck with two hands, yet Daughter testified that she did not see him choke Son. He asserts that J.B. testified that she did not see what happened because she was still walking into the house, and she only saw that he had his hands on Son's shirt collar. He also asserts that Son testified that Daughter called the police while they were on the way to IGA, yet Daughter testified that J.B. called the police while J.B. was in the garage. He further asserts that Son, Daughter, and J.B.'s testimonies differed from their prior statements to the police.

{¶30}  Mr. Walter is correct in that Daughter and J.B.'s trial testimony differed from their prior statements to the police.  The trial court, however, was in the best position to assess their credibility.  *See State v. Robinson*, 9th Dist. Wayne No. 18AP0045, 2019-Ohio-3613, ¶ 10, quoting *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28 ("As the trier of fact, the trial court was in the best position to observe the witnesses' demeanor and to 'use th[o]se observations to weigh the credibility and resolve the conflicts in the testimony.'").  The trial court was free to determine that the statements Daughter and J.B. made to the police shortly after the incident took place were more credible than their trial testimonies.  This is especially so given that J.B. testified that she was still dating Mr. Walter and did not want him to go to jail, and that Daughter testified that she loved Mr. Walter and had been told about the potential consequences of the trial.

{¶31}  Regarding Son's testimony that Daughter called the police, defense counsel played the 911 call during Son's cross-examination.  Son acknowledged that J.B., not Daughter, called 911.  On re-direct examination, Son indicated that the 911 call refreshed his memory.  Regarding Mr. Walter's assertion that Son's testimony differed from his prior statement to the police, he has not cited any specific testimony or explained how Son's testimony was inconsistent.  *See* App.R.16(A)(7) (requiring an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.").

{¶32}  While J.B. and Daughter's testimonies differed from their prior statements to the police, and the details of the incident differed among the witnesses, this Court cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that Mr. Walter's

convictions must be reversed and a new trial ordered. Mr. Walter's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

WALTER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶33} In his second assignment of error, Mr. Walter argues that his trial counsel provided ineffective assistance. We disagree.

{¶34} To prevail on a claim of ineffective assistance of counsel, Mr. Walter must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Walter must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶35} Mr. Walter asserts that his trial counsel provided ineffective assistance for four reasons. First, he asserts that the Wayne County Children's Services ("the Board") investigated this matter, and that the Board closed the investigation without taking any action on the basis that the claims were unsubstantiated. He asserts that his trial counsel had a duty to investigate and present evidence regarding the Board's investigation, which, he asserts, could have had a significant effect on this case.

{¶36} Second, Mr. Walter asserts that his trial counsel failed to call an EMS employee as a witness, who would have testified that neither Son nor Daughter suffered any injuries or received medical treatment. He surmises that an EMS employee could have impeached Son's version of the events and verified that, if Son was choked, there would have been marks on his neck.

{¶37} Third, he asserts that his trial counsel should have presented evidence regarding the fact that Daughter had called EMS on a different occasion. He asserts that the police investigated the other matter and concluded that he did not hurt Daughter, and that Daughter called EMS for no reason. He concludes that Daughter's prior false report would have shown that she was not credible, and that she harbored animosity toward him.

{¶38} Lastly, Mr. Walter asserts that his trial counsel should have called his (Mr. Walter's) son as a witness. He asserts that his son lived with him, and that he witnessed other incidents where Son and Daughter lied to him. He concludes that this could have raised doubts about Son and Daughter's credibility.

{¶39} Each of Mr. Walter's arguments fails to establish that his trial counsel provided ineffective assistance. Regarding the Board's alleged investigation in this matter, his argument relies upon matters outside of the record. "This is problematic because '[w]hen an appellant argues that trial counsel was ineffective based on evidence that is outside of the trial court record, it is 'impossible' for this Court to determine the merits of the argument.'" *State v. Price*, 9th Dist. Medina No. 14CA0070-M, 2015-Ohio-5043, ¶ 35, quoting *State v. Alston,* 9th Dist. Lorain No. 14CA010612, 2015-Ohio-4127, ¶ 21. "Thus, we cannot conclude based on the record before us whether there was any ineffective assistance on trial counsel's part in this regard." *Id.*

{¶40} Each of Mr. Walter's remaining arguments is based upon his trial counsel's failure to call certain witnesses. As the Ohio Supreme Court has stated, trial "[c]ounsel's decision to call

a witness is a matter of trial strategy. Such decisions will generally not be second-guessed by a reviewing court." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 113. Moreover, Mr. Walter speculates as to the testimony those witnesses could have provided. This speculation, however, is insufficient to establish ineffective assistance. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶ 119, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217 (stating that mere speculation "is insufficient to establish ineffective assistance."). In light of the foregoing, Mr. Walter's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE STATE OF OHIO['S] MOTION FOR THE COURT TO CALL WITNESS, AS ITS OWN WITNESS, PURSUANT TO EVID. RULE 614(A).

**{¶41}** In his third assignment of error, Mr. Walter argues that the trial court abused its discretion and committed reversible error when it called J.B. as the court's witness. This Court disagrees.

**{¶42}** Evidence Rule 614(A) provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "The decision as to whether to call a witness on its own motion pursuant to Evid.R. 614(A) is within the discretion of the trial court, and will be reversed only for an abuse of such discretion." *State v. Marshall*, 9th Dist. Lorain No. 01CA007773, 2001 WL 1647706, * 2 (Dec. 26, 2001). "An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *State v. Basford*, 9th Dist. Medina No. 20CA0017-M, 2021-Ohio-161, ¶ 34, *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Even if a trial court abuses its discretion in calling a witness as the court's witness, that error may be deemed harmless if it did not affect the outcome of the trial. *State v. Watson*, 9th Dist. Summit No. 25229, 2011-Ohio-2882, ¶ 15

("[E]ven assuming, without deciding, that the trial court abused its discretion in calling the witnesses as court's witnesses, [the appellant] has not established that the error was anything other than harmless."); Crim.R. 52(A).

{¶43} "This Court has specifically recognized that a trial court has the discretion to call a domestic violence victim as its own witness under Evid.R. 614(A) where the victim changes her testimony at trial." *State v. Gilcreast*, 9th Dist. Summit No. 25509, 2011-Ohio-2883, ¶ 8. Additionally, "[i]t is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Clay*, 9th Dist. Summit No. 27015, 2014-Ohio-3806, ¶ 57, quoting *State v. Arnold,* 189 Ohio App.3d 507, 2010–Ohio–5379, ¶ 44 (2d Dist.).

{¶44} Here, the record reflects that the State requested that the trial court call J.B. as a court witness under Rule 614(A). The prosecutor stated that she had "briefly spoken with [J.B.] in the hallway and she indicated, again, essentially that what she is going to say today is going to be much different than what she said during the incident[.]" The prosecutor also noted that the parties briefly discussed this issue in chambers, but that discussion is not part of the record on appeal. Defense counsel objected, arguing that J.B. should testify as a witness for the State and that, if J.B. testified as the prosecutor anticipated she would, then the parties could address the issue at that time.

{¶45} Even assuming that the trial court abused its discretion by calling J.B. as the court's witness, we cannot say that this resulted in reversible error. *Watson* at ¶ 15. Criminal Rule 52(A) governs harmless error and provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "Whether the defendant's substantial rights

were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial." *State v. Jones,* 160 Ohio St.3d 314, 2020-Ohio-3051, ¶ 18.

**{¶46}** Here, as the State anticipated, J.B.'s testimony differed significantly from her prior statement to the police. The prosecutor used J.B.'s prior statement to the police, as well as Deputy Rubenstein's bodycam footage, to impeach her trial testimony. Defense counsel then had the opportunity to cross-examine J.B. We cannot say that any error in the trial court calling J.B. as the court's witness affected the outcome of trial, nor has Mr. Walter argued as much. *See Mahoney v. Mahoney*, 9th Dist. Medina No. 16CA0061-M, 2017-Ohio-7917, ¶ 9 ("It is the appellant's burden to affirmatively demonstrate error on appeal."). Consequently, Mr. Walter's third assignment of error is overruled.

## III.

**{¶47}** Mr. Walter's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.