**[Cite as *State v. Hemingway*, 2023-Ohio-1075.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 22CA011852 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS HEMINGWAY | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 2021-CRB-00223 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2023

SUTTON, Presiding Judge.

{¶1} Defendant-Appellant Thomas Hemingway appeals from his judgment of conviction in the Elyria Municipal Court. For the reasons that follow, this Court affirms.

I.

{¶2} On January 29, 2021, Mr. Hemingway was arrested and charged with one count of domestic violence in violation of R.C. 2919.25, and one count of assault, in violation of R.C. 2903.13.

{¶3} The case proceeded to a bench trial on December 1, 2021. At trial, the prosecution called four witnesses: Mr. Hemingway's wife, L.H., Mr. Hemingway's 16-year-old daughter, G.H., and the two officers who responded to the Hemingway residence the evening Mr. Hemingway was arrested, Sergeant Matt Downing and Patrolman Kyle Schmidt of the North Ridgeville Police Department.

{¶4}　The officers both testified they arrived at the Hemingway residence in North Ridgeville in separate cars at about the same time in response to a call from dispatch about a domestic disturbance at the Hemingway residence.　When they arrived, Mr. Hemingway was outside of the home.　Patrolman Schmidt remained outside to speak with Mr. Hemingway while Sergeant Downing went inside to speak with L.H. and G.H.

{¶5}　Sergeant Downing testified that he briefly interacted with Mr. Hemingway, enough to know Mr. Hemingway was alleging his wife struck him, before Sergeant Downing entered the Hemingway residence.　Once Sergeant Downing entered the residence, he observed a dining table, overturned and damaged with broken legs.　He also observed some stool chairs that appeared to be thrown.　Sergeant Downing spoke with L.H. first, who told him that Mr. Hemingway was upset that evening because he learned his daughter had a boyfriend.　Sergeant Downing stated that L.H. told him that G.H. had refused to give Mr. Hemingway her phone, so Mr. Hemingway had tackled her, causing her daughter's head to strike the floor and her nose to begin to bleed.　Sergeant Downing observed what appeared to be blood on the front of G.H.'s sweatshirt, along with a towel with blood on it.

{¶6}　Sergeant Downing also testified that L.H. admitted to hitting her husband in the head, but did so in an attempt "[t]o keep [Mr. Hemingway] off her daughter."　Sergeant Downing stated that based on his conversations with everyone present, and his observations at the scene, he determined Mr. Hemingway to be the primary aggressor and went outside to tell Patrolman Schmidt to place Mr. Hemingway in custody.

{¶7}　Patrolman Schmidt testified that he remained outside the Hemingway residence. He stated that Mr. Hemingway had no visible marks on his forehead and continued to maintain that his wife, L.H., struck him on the head with her open hand.　He also testified that while Sergeant

Downing made the determination that Mr. Hemingway was the primary aggressor on the night in question, he had no question in his mind who the primary aggressor was that night, and he believed that the correct determination was that Mr. Hemingway was the primary aggressor.

{¶8} L.H. testified that on the night in question, she had been out having drinks with friends to celebrate her promotion at work. Mr. Hemingway showed up at the bar they were at and proceeded to drink a lot to the point where he became very intoxicated. L.H. stated that they began fighting in the car on the way home from the bar, and that the fighting escalated when they returned home and discovered their 16-year-old daughter, G.H., on the phone with her boyfriend. L.H. stated that she was aware that her daughter had a boyfriend but had not informed Mr. Hemingway that their daughter had a boyfriend.

{¶9} G.H. testified she was on the phone with her boyfriend when her parents came home that evening. She testified that once the argument over her phone began, Mr. Hemingway pushed her to the ground and her nose began to hurt. She also testified that after her nose began hurting, she got back up, and Mr. Hemingway "pushed me back to the ground" and "he called me a whore." She testified that when she sat at the table with her father and mother, Mr. Hemingway "started yelling at me because [she] didn't friend him on Facebook." G.H. testified that after Mr. Hemingway smashed her phone, "[h]e started picking up chairs and * * * throwing them in [her] direction." She stated that when her mother, L.H., observed this, she got up and "pushed him on the head, like the top of the head with her palm to like get him to stop."

{¶10} At the close of the prosecution's case, defense counsel rested without presenting any witnesses, and Mr. Hemingway did not testify in his own defense. The trial court subsequently found Mr. Hemingway guilty of one count of domestic violence and dismissed the assault charge.

Mr. Hemingway was fined $800, with $300 suspended, and sentenced to 180 days in jail, with 170 suspended on the condition that he complied with all of the terms of his probation.

{¶11} Mr. Hemingway timely appealed, assigning two errors for our review.

II.

## ASSIGNMENT OF ERROR I

## [MR. HEMINGWAY'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶12} In his first assignment of error, Mr. Hemingway argues his conviction was against the manifest weight of the evidence. For the reasons that follow, we disagree.

### Manifest Weight of the Evidence

{¶13} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340. "Additionally, it is well established that 'the weight to be

given the evidence and the credibility to the witnesses are primarily for the trier of facts." *Bilder v. Main Paint and AutoBody*, 9th Dist. Summit No. 20723, 2002-Ohio-748, * 1, *citing State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

R.C. 2919.25 – Domestic Violence

{¶14} Mr. Hemingway was convicted of one count of domestic violence, in violation of R.C. 2919.25. R.C. 2919.25(A) states: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶15} On appeal, Mr. Hemingway argues that the police officers' testimony lacked credibility because the officers had no firsthand knowledge of what happened between Mr. Hemingway and his family members, and the officers failed to test G.H.'s sweatshirt for blood. However, Sergeant Downing, a 24-year veteran of the police department, testified that it looked like blood to him. Both L.H. and G.H. testified that the spots on the sweatshirt were blood.

{¶16} Mr. Hemingway argues that L.H., and G.H lacked credibility because of an incident that occurred after the night in question when L.H. allegedly lied to the police to protect her daughter. However, L.H. admitted on the stand to striking her husband on the night in question. Sergeant Downing also testified L.H. admitted to striking her husband on the night in question, despite the possibility that the police could have determined she was the primary aggressor. Additionally, Mr. Hemingway does not elaborate on why L.H. admitting to lying to police about a different incident would call into question the credibility of G.H.'s testimony. Regardless of whether the spots on G.H.'s sweatshirt were blood, G.H. testified Mr. Hemingway had knocked her to the ground on more than one occasion that night and had also thrown furniture in her direction. The officers also testified to finding the residence in a state of disarray, with flipped and broken furniture.

{¶17} This Court must "consider the credibility of witnesses" as part of our manifest weight review. *Thompkins*, 78 Ohio St.3d at 387. Nonetheless, this Court is mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 39, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Given the evidence presented by the State in this case, this Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against Mr. Hemingway's conviction.

{¶18} Mr. Hemingway's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

## [MR. HEMINGWAY]'S COUNSEL WAS INEFFECTIVE[.]

{¶19} In his second assignment of error, Mr. Hemingway argues he was denied effective assistance of counsel. For the reasons that follow, we disagree.

### Ineffective Assistance of Counsel

{¶20} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Hemingway must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Mr. Hemingway must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶21} Mr. Hemingway argues that he received ineffective assistance of counsel because: (1) his trial counsel failed to object to inadmissible testimony; (2) his trial counsel elicited damaging testimony on cross-examination and failed to properly cross-examine the State's witnesses; and (3) his trial counsel failed to introduce certain evidence at trial.

{¶22} Each of Mr. Hemingway's arguments fails to establish that his trial counsel provided ineffective assistance of counsel. Regarding trial counsel's alleged failure to object to inadmissible testimony, "[t]his Court had consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Sandin*, 9th Dist. Medina No. 21CA0040-M, 2023-Ohio-174, ¶ 22, quoting *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24, quoting *State v. Guenther*, 9th Dist. Lorain No. 05CA008663, 2006-Ohio-767, ¶ 74. Regarding trial counsel's strategic decision regarding which questions to ask on cross examination, this Court has previously stated: "[s]trategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *State v. Granakis*, 9th Dist. Wayne No. 15AP0053, 2017-Ohio-8428, ¶ 29, quoting *State v. Miller*, 9th Dist. Summit No. 23240, 2007-Ohio-370, ¶ 10, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶23} Lastly, with regard to trial counsel's failure to introduce a video that was never made part of the record, Mr. Hemingway's argument relies upon evidence that was never made part of the record in the trial court. "This is problematic because '[w]hen an appellant argues that trial counsel was ineffective based on evidence that is outside of the trial court record, it is 'impossible' for this Court to determine the merits of the argument." *State v. Walter*, 9th Dist. Wayne No. 20AP0020, 2022-Ohio-1982, ¶ 39, quoting *State v. Price*, 9th Dist. Medina No. 14CA0070-M, 2015-Ohio-5043, ¶ 35, quoting *State v. Alston*, 9th Dist. Lorain No. 14CA010612,

2015-Ohio-4127, ¶ 21. "Thus, we cannot conclude based on the record before us that there was any ineffective assistance of trial counsel's part in this regard." *Id*.

**{¶24}** Mr. Hemingway's second assignment of error is overruled.

### III.

**{¶25}** Mr. Hemingway's assignments of error are overruled. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

EDWARD F. BORKOWSKI, Attorney at Law, for Appellant.

SEAN F. KELLEHER, Prosecuting Attorney, for Appellee.