[Cite as *State v. Ross*, 2013-Ohio-522.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    12CA0007 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GARY A. ROSS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.    TRD-11-06-04934 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2013

CARR, Judge.

{¶1}    Appellant, Gary Ross, appeals the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    This case stems from a traffic stop that occurred on June 17, 2011. Ross was charged with speeding, failing to wear a safety belt, and driving with a suspended license. After initially pleading not guilty to the charges, the matter proceeded to trial. The jury found Ross guilty of driving with a suspended license, and the trial court found Ross guilty of speeding and driving without a safety belt. With respect to the charge of driving with a suspended license, the trial court sentenced Ross to 30 days in jail, three of which were mandatory, a fine of $250, as well as a six-month driver's license suspension. Ross also received a fine of $35 for speeding, and a fine of $30 for driving without a seatbelt. Additionally, points were assessed to Ross' license as mandated by law.

**{¶3}** On appeal, Ross raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S PRETRIAL MOTION TO CONSOLIDATE TRIALS."

**{¶4}** In his first assignment of error, Ross argues that the trial court abused its discretion by denying his pretrial motion to consolidate trials. This Court disagrees.

**{¶5}** The instant appeal stems from a traffic stop that occurred on June 17, 2011. Ross notes in his merit brief that several weeks earlier, on May 29, 2011, he had refused to submit to a breathalyzer test during a traffic stop and, as a result, incurred an administrative license suspension. The two cases were resolved separately in the Wayne County Municipal Court, and it is unclear from the record when Ross moved the trial court to consolidate the cases. The parties appeared for a pretrial conference on November 3, 2011, and again for a hearing on November 9, 2011. The record contains a journal entry dated November 9, 2011, that states, in part, "A hearing was held today on several defense motions. The Defendant moved that the two above cases [TRC-11-05-03983 and TRD-11-06-04934] be consolidated for trial. That motion is denied." The record neither contains a written copy of the motion to consolidate, nor does it contain a transcript from a pretrial hearing in which Ross moved to consolidate the two cases.

**{¶6}** This Court is "constrained by the record on appeal." *Walker v. Lou Restoration*, 9th Dist. No. 26236, 2012-Ohio-4031, ¶ 8. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. In the absence of an adequate record, an appellate court must presume regularity in the trial court's proceedings. *State v. Ford*, 9th Dist. No. 26260, 2012-Ohio-4028, ¶ 10. Because

this Court is unable to review the substantive arguments Ross made in support of his motion to consolidate, we must presume regularity in the trial court's decision to deny the motion. *Id.*

{¶7} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

DEFENDANT-APPELLANT'S CONVICTION FOR DRIVING WITHOUT A SEAT BELT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

DEFENDANT-APPELLANT'S CONVICTION FOR SPEEDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} In his second and third assignments of error, Ross argues that his convictions for failing to wear a safety belt and speeding were against the manifest weight of the evidence. This Court disagrees.

{¶9} Unlike a challenge to the sufficiency of the evidence, a determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Otten*, at 340.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶10} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶11} This matter proceeded to trial on December 21, 2011. Michael Cannon of the Ohio State Highway Patrol testified on behalf of the State at trial. On June 17, 2011, Trooper Cannon was on patrol when he observed a truck on County Road 30A, in Wayne County, traveling at a rate of speed which appeared to exceed the speed limit of 45 miles per hour. After Trooper Cannon visually estimated that the truck was traveling 55 miles per hour, he activated the MPH Python II radar gun and began tracking the speed of the vehicle. Trooper Cannon testified that while the vehicle "initially checked in at 54 [miles per hour]," the vehicle maintained a speed of 55 miles per hour for approximately five seconds, and he "locked the speed in [] at 55 m.p.h." Trooper Cannon further testified that, "when [Ross] was passing by me as I was tracking the vehicle, that he did not have his safety belt on[.]"

{¶12} Trooper Cannon initiated a traffic stop, and Ross pulled his truck into the parking lot of Jordan's Exhaust. As Trooper Cannon approached the truck, Ross "immediately got out of the truck" and Trooper Cannon asked Ross to go back and sit in his truck. At that time, Trooper Cannon had not yet had a chance to run a check on the license plate. Trooper Cannon testified that while the truck was equipped with seat belts, Ross was not wearing one. According to Trooper Cannon, Ross "admitted that he didn't have it on." When Trooper Cannon asked for his license and registration, Ross informed him that his license had been suspended. When Trooper Cannon ran Ross' information through the LEADS computer system, it confirmed that Ross had incurred an administrative license suspension. The State introduced Ross' driving record as an exhibit at trial which also evidenced the suspension.

{¶13} Ross testified in his own defense at trial, and asserted that Trooper Cannon was "mistaken" regarding whether Ross had been wearing his seat belt as he drove his truck. Ross admitted that he removed his seat belt when he got out of his truck after being pulled over, but maintained that he was wearing his seat belt when he was operating his vehicle. Ross further testified that he drives a truck for a living and only "[v]ery rarely" does he not wear a seat belt. In regard to the speeding charge, Ross testified, "The speed limit drops right before [] from 55 to 45, I had left off the accelerator and was coasting down. He may have tagged me when I was still, I wasn't speeding coming up the road. I was doing 55 in a 55 and then I let off the accelerator to slow down. He may have tagged me right at that moment. * * * I should [have] slowed down a little sooner." When asked to estimate the distance from the point where the speed limit dropped from 45 miles per hour to the parking lot for Jordan's Exhaust, Ross testified, "It's a bit of a distance. * * * a quarter mile, maybe, maybe, three, four hundred yards." Ross continued, "I was thinking about Jordan's and I wasn't thinking and then I left off the accelerator and then I [saw the State Trooper] and I went on up and pulled into Jordan's and got out of the truck and was going in when he pulled in behind me and had his lights on."

{¶14} Trooper Cannon issued Ross a citation charging him with speeding in violation R.C. 4511.21(C), failure to wear a safety belt in violation of R.C. 4513.26[3](B)(1), and driving with a suspended license in violation of R.C. 4510.14. On appeal, Ross raises manifest weight challenges in regard to his convictions for speeding and failing to wear a safety belt.

**Failing to Wear a Safety Belt**

{¶15} In support of his position that his conviction for failing to wear a safety belt was against the manifest weight of the evidence, Ross argues that his own testimony at trial demonstrated that he was wearing a seat belt when he operated his vehicle. Ross emphasizes

that he testified under oath that he was wearing his seat belt when he was operating his vehicle, and he removed his seat belt only after he came to a stop in the parking lot of a business.

{¶16} Only two witnesses testified in this case, and they offered sharply conflicting testimony in regard to whether Ross was wearing his seat belt while he was driving his truck on County Road 30A. Trooper Cannon specifically testified that when Ross' vehicle passed the spot where Trooper Cannon was sitting in his cruiser, Ross was not wearing a seat belt. Trooper Cannon further testified that Ross admitted during the traffic stop that he was not wearing a seat belt. When asked to respond to this testimony at trial, Ross stated, "I believe [Trooper Cannon] is mistaken." Ross testified that he was, in fact, wearing a safety belt when he was driving his truck and that he did not remove it until after he had been pulled over. While there was conflicting testimony at trial, we note that the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. In light of Trooper Cannon's testimony at trial, we cannot conclude that this is the exceptional case where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶17} The second assignment of error is overruled.

**Speeding**

{¶18} In support of his position that the weight of the evidence did not support his speeding conviction, Ross again points to his own testimony at trial. Ross argues that he was lawfully traveling at the posted limit of 55 miles per hour just prior to his truck entering the 45 miles per hour zone, and that he immediately decelerated by taking his foot off the gas in order

to comply with the lower limit. Ross concludes that convicting him under these circumstances would be a miscarriage of justice.

{¶19} When Trooper Cannon visually estimated that Ross was traveling 55 miles per hour in a 45 miles-per-hour zone, he began to track Ross' truck with a radar gun. After Trooper Cannon tracked Ross at 55 miles per hour for approximately five seconds, he locked Ross in at that rate of speed. In testifying in his own defense, Ross did not directly contradict the testimony of Trooper Cannon. Instead, Ross explained that the trooper may have started to track him immediately after Ross exited a zone where the speed limit was 55 miles per hour. However, Ross did not dispute that he should have slowed down sooner, stating, "[Trooper Cannon] may have tagged me when I was still, I wasn't speeding coming up the road. I was doing 55 in a 55 and then I let off the accelerator to slow down. He may have tagged me right at that moment. * * * I should [have] slowed down a little sooner." In light of Trooper Cannon's testimony that he tracked Cannon traveling at 55 miles per hour for approximately five seconds in a 45 miles-per-hour zone, and in light of overwhelming evidence to the contrary, the trial court did not clearly lose its way in convicting Ross of speeding.

{¶20} The third assignment of error is overruled.

III.

{¶21} Ross' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

BRIAN L. SUMMERS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.