[Cite as *State v. Patrick*, 2022-Ohio-3470.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

BRYANT PATRICK

    Appellant

C.A. No.    21AP0009

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2020 CR-B 000793

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

CARR, Judge.

**{¶1}** Defendant-Appellant Bryant Tyrell Patrick appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

**{¶2}** On July 4, 2020, Patrick struck J.R. in the face, causing her to have a bloody nose and to fall to the ground. Thereafter, Patrick was alleged to have committed the offense of domestic violence in violation of R.C. 2919.25(A).

**{¶3}** The matter proceeded to a bench trial, at which the trial court called J.R. as the court's witness. The trial court found Patrick guilty of the offense and sentenced Patrick accordingly.

**{¶4}** Patrick filed a motion for a delayed appeal, which this Court granted. Patrick has raised three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE STATE OF OHIO['S] MOTION FOR THE COURT TO CALL ALLEGED VICTIM WITNESS AS ITS OWN WITNESS, PURSUANT TO EVID.R. 614(A).

{¶5} Patrick argues in his first assignment of error that the trial court abused its discretion in calling J.R. as the court's witness pursuant to Evid.R. 614(A). Specifically, Patrick asserts that the trial court failed to follow the dictates of *State v. Watson*, 9th Dist. Summit No. 25229, 2011-Ohio-2882.

{¶6} Evid.R. 614(A) states that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "The decision as to whether to call a witness on its own motion pursuant to Evid.R. 614(A) is within the discretion of the trial court, and will be reversed only for an abuse of such discretion." *State v. Walter*, 9th Dist. Wayne No. 20AP0020, 2022-Ohio-1982, ¶ 42, quoting *State v. Marshall*, 9th Dist. Lorain No. 01CA007773, 2001 WL 1647706, *2 (Dec. 26, 2001). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Even if a trial court abuses its discretion in calling a witness as the court's witness, that error may be deemed harmless if it did not affect the outcome of the trial." *Walter* at ¶ 42, citing *Watson* at ¶ 15.

{¶7} "This Court has specifically recognized that a trial court has the discretion to call a domestic violence victim as its own witness under Evid.R. 614(A) where the victim changes her testimony at trial. Additionally, [i]t is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial

testimony will contradict a prior statement made to police." (Internal quotations and citations omitted.) *Walter* at ¶ 43.

{¶8}    At trial, the following discussion took place:

[The trial court:]  All right.  Then the other issue what was addressed here at sidebar, the parties addressed that there was an alleged victim in this case who is present today, one of the two witnesses for trial, the State noted in the presence of defense counsel here at the bench that there was a victim meeting with that individual, back I believe in September you said and what the statements that were communicated at that time were different apparently then what you heard today caused the State to be surprised by that.  Ask if the Court would call that witness as a Court's witness.  [Defense counsel] do you want to address that?  You wanted to put that on the record.

[Defense counsel:]  Yes, Your Honor, I would object to [J.R.] being called as the Court's witness.  It is my client's constitutional right to have the State prove beyond a reasonable doubt that this offense occurred and if the State cannot meet that burden by adhering to the rules of evidence that they call their witness and adhere to those rules.  Perhaps the State would consider a different offer.

[The trial court:]  All right.  The Court did hear the part[ies'] assessment on that at side[bar].  The Court agrees the State does have the responsibility to prove each and every element of the offense beyond a reasonable doubt.  However, part of the legal rules, part of either direct or cross examination is for the purpose of ascertaining the truth of the charge either way and the State indicates that [J.R.] was apparently cooperative and provided some statement consistent with what they believed happened from the police report.  And that in their discussion with her today, there was something different communicated then was communicated at the victim meeting.  The purpose of having the Court call [J.R.] as a witness is that it avails the State of the opportunity to cross examine that witness based upon the surprise from a different statement now in court or a proposed different statement now today versus a prior statement that they were preparing their case upon so, the Court has several times before allowed the witness to be cross examined by both parties.  And if that's the, the purpose of that is to ascertain the truth of the allegations either way the Court believes that is helpful.  The State notes that they were surprised by [J.R.'s] statements today as to what she would testify to, as opposed to what she said previously.  So, based upon that the Court will call [J.R.] as the Court's witness.  Allow both parties to ask either direct or cross examination questions, however they choose.

{¶9}    The trial court then did call J.R. as a court's witness.

**{¶10}** While the situation above seems to demonstrate that it meets the standard set forth by this Court in *Walter*, *see Walter* at ¶ 43, Patrick argues that it fails to comply with language in *Watson*. In *Watson,* this Court stated:

> While there is nothing in the rule prescribing a specific process for the trial court in considering a request under Evid.R. 614(A), some minimal safeguards should be employed given the ramifications of allowing a witness to be a court's witness. At a minimum, this should include a requirement that the party seeking to employ Evid.R. 614(A) submit an affidavit describing the specific facts and circumstances for invoking the rule. Further, in the face of conflicting factual allegations, if the opposing party objects to employment of the rule the trial court should examine the prospective court's witness.

*Watson,* 2011-Ohio-2882, at ¶ 14.

**{¶11}** However, this language was dicta, as the Court went on to decide the issue based upon harmless error. *See id.* at ¶ 15; *see also State v. Armstrong*, 7th Dist. Mahoning No. 20 MA 0127, 2022-Ohio-1119, ¶ 28 (noting that this Court's statements in paragraph 14 of *Watson* were dicta). Patrick has not pointed this Court to any case from this Court that subsequently adopted that standard as a holding. Accordingly, Patrick has failed to demonstrate that the trial court had a duty to follow the standard in *Watson*.

**{¶12}** Based upon the record before us, and the arguments raised by Patrick, Patrick has not demonstrated that the trial court abused its discretion in calling J.R. as the court's witness. Patrick's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

PATRICK'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE
AS A MATTER OF LAW.

**{¶13}** Patrick argues in his second assignment of error that his conviction was based upon insufficient evidence. Specifically, he asserts that the State failed to establish that Patrick acted knowingly, and that Patrick did not act in self-defense. We shall limit our discussion accordingly.

**{¶14}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶15}** R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

**{¶16}** R.C. 2901.05(B) indicates that:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶17}** As discussed above, J.R. testified as a court's witness. She averred that she and Patrick had been dating for several years and living together on and off during that time. At the time of the events at issue, July 4, 2020, she, Patrick, and her son had been living in a house together for approximately six months and had been sharing expenses. While no longer in a

relationship with Patrick at the time of trial, J.R. has discussed entering back into a relationship with Patrick and would possibly be interested in doing so again.

{¶18} On the evening of July 4, 2020, Patrick and J.R. were arguing in the parking lot of an apartment complex where some of Patrick's family lived. At trial, J.R. claimed that she wanted to leave, and Patrick would not give her car keys to her. J.R. maintained that she was quite intoxicated and that they both made threats towards each other. Patrick had been drinking as well.

{¶19} Patrick then left with J.R.'s vehicle, and J.R. called the police. Minutes later, Patrick returned and J.R. called the police back. The couple then began arguing again. J.R. wanted her keys. J.R. testified that they both began threatening each other. J.R. averred that she then walked up behind Patrick trying to get her keys and that was when Patrick struck her. She testified that his hand hit her nose. The strike caused her to have a bloody nose and caused her to fall to the ground. She did not know whether Patrick knew she was behind him.

{¶20} J.R. again called 911. When police arrived, she declined further medical treatment, but she did provide a written statement that was admitted into evidence. When confronted with the video from the officer's body camera who arrived on the scene, J.R. claimed to not remember a lot of what she told the officer.

{¶21} On cross-examination by defense counsel, J.R. again testified that she was highly intoxicated during the argument and additionally indicated that she was probably not safe to drive. She testified that she threatened to hit Patrick if he did not give her back her keys. J.R. claimed she made several threats and called Patrick names. She told him that she would get him in trouble if he did not comply. She asserted that Patrick was probably withholding her keys because she should not have been driving. The argument became physical when Patrick started to walk away and J.R. kept arguing, threatening him, and then walked up behind him. Patrick then turned around

and his hand ended up hitting her face. When asked if she thought Patrick hit her on purpose, she said, "No, absolutely not." However, even on cross-examination, J.R. stated that she intended to make physical contact with him, but he was the one who actually struck her. She denied making any physical contact with him.

{¶22} J.R.'s statement to police reads:

Bryant was acting belligerent and ask[ed] me to take him home[.] He [] called me a mutt[.] [H]e got mad [b]ecause I refused to take him home. He told me not to come back home. He then drove off with my car. I called 911. Ten minutes later he came back. He then got mad because I refused to take him anywhere. He threatened me again and told me not to come home. I went to park my car in a parking space. We exchanged words. He raised his hand at me and threatened me again. I went to walk off. We continued to exchange words. He hit me in my face with an open hand, accused me of cheating. I hit my head on the ground. My nose was bleeding. He walked off with my key fo[b] to my car. I am afraid to go home because of the threats.

{¶23} Photos of J.R. were also admitted into evidence. In two of the photos, she is holding bloody tissues.

{¶24} The officer who arrived at the scene testified that J.R.'s nose was still actively bleeding when he arrived. The officer described J.R. as very upset and that she looked like she had either been crying or was about to cry. J.R. expressed being afraid of Patrick and signed a temporary protection order on the scene. The officer did not detect any signs that J.R. was intoxicated and she did not smell of alcohol.

{¶25} Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence, if believed, to prove beyond a reasonable doubt that Patrick acted knowingly and did not act in self-defense. Accordingly, we conclude that the State met its burden to demonstrate that Patrick acted knowingly and did not act in self-defense.

{¶26} J.R.'s statement to the police supports that Patrick acted knowingly and not in self-defense. The statement supports that Patrick hit J.R. in the face after J.R. was attempting to walk

away. Moreover, neither the statement nor J.R.'s trial testimony evidence that J.R. ever struck Patrick.

**{¶27}** The fact that J.R.'s testimony somewhat contradicts her statement would be an issue of credibility and has no bearing on the sufficiency of the evidence. *See State v. Cunningham*, 9th Dist. Medina No. 19CA0081-M, 2021-Ohio-2710, ¶ 15. Patrick has not demonstrated that his conviction was based upon insufficient evidence.

**{¶28}** Patrick's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

PATRICK'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶29}** Patrick argues in his third assignment of error that the finding of guilt is against the manifest weight of the evidence.

**{¶30}** A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶31}** On appeal, Patrick points to J.R.'s trial testimony and to the fact that she testified that she threatened Patrick with physical harm and was angry and intoxicated in support of his claim that the weight of the evidence indicated that Patrick acted in self-defense. Patrick argues J.R.'s prior statement to police is not credible.

**{¶32}** After independently reviewing the entire record, we cannot say that Patrick has demonstrated that the trial court lost its way in finding Patrick guilty. It would not have been unreasonable for the trial court to question the credibility of J.R.'s trial testimony. First, given that J.R. was interested in the possibility of pursuing a relationship with Patrick again, she could have been motivated to try to help Patrick. In addition, while J.R. claimed at trial that she was highly intoxicated during her argument with Patrick, the officer did not detect any signs of impairment and testified that J.R. did not smell of alcohol. Moreover, the trial court was able to view a portion of the video of the officer's body camera footage, which depicted J.R. Further, the trial court had before it a detailed written statement from J.R. and could have been skeptical that a highly intoxicated person could have composed it. Finally, even J.R.'s trial testimony supports that J.R. never hit Patrick. Overall, we cannot say that it was unreasonable for the trial court to conclude that Patrick was guilty of domestic violence.

**{¶33}** Patrick's third assignment of error is overruled.

### III.

**{¶34}** Patrick's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.


APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting attorney, and FREELAND OLIVERIO, Assistant Prosecuting Atorney, for Appellee.