[Cite as *State v. Smith*, 2026-Ohio-1756.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31657 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2025-01-0177 |

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

CARR, Presiding Judge.

{¶1} Defendant-Appellant Christopher Smith appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In January 2025, Smith was indicted on one count of strangulation and one count of domestic violence. The charges related to a January 11, 2025 incident involving Smith's fiancée, C.C. Around 2:00 a.m., C.C. called 911 three times and ultimately reported to police that Smith had assaulted her.

{¶3} Prior to trial, the State moved to have C.C. called as a court's witness pursuant to Evid.R. 614(A). According to the State, C.C. had made statements that were inconsistent with her initial statements and sought to have the charges dismissed. The matter proceeded to a bench trial. At the beginning of the trial, the State broached the subject of calling C.C. as a court's witness. The trial court declined to initially call C.C. as a court's witness, but indicated that if the testimony

warranted it, the trial court would reconsider.  Partway through C.C.'s testimony, the trial court opted to call her as a court's witness.  Defense counsel objected.

{¶4}  Ultimately, the trial court found Smith not guilty of strangulation, but guilty of domestic violence.  Smith was sentenced accordingly.

{¶5}  Smith has appealed, raising five assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DECLARED C.C.
A COURT'S WITNESS.

{¶6}  Smith argues in his first assignment of error that the trial court abused its discretion when it declared C.C. a court's witness.

{¶7}  Evid.R. 614(A) states that, "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."  The decision to call a witness as a court's witness is reviewed for an abuse of discretion.  *State v. Patrick*, 2022-Ohio-3470, ¶ 6 (9th Dist.).  An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  "This Court has specifically recognized that a trial court has the discretion to call a domestic violence victim as its own witness under Evid.R. 614(A) where the victim changes her testimony at trial.  Additionally, [i]t is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *Patrick* at ¶ 7, quoting *State v. Walter*, 2022-Ohio-1982, ¶ 42 (9th Dist.).  Nonetheless, "[e]ven if a trial court abuses its discretion in

calling a witness as the court's witness, that error may be deemed harmless if it did not affect the outcome of the trial." (Internal quotations omitted.) *Patrick* at ¶ 6, quoting *Walter* at ¶ 42.

{¶8} As mentioned above, the trial court initially declined to call C.C. as a court's witness. It was only partway through the State's direct examination that the trial court declared C.C. to be a court's witness. At that point, C.C. asserted that Smith had never put his hands on her. The State then asked if she said the same thing the night of the assault. When C.C. said that she could not remember, the State refreshed her recollection by showing her the statement she made that night. The State then asked whether C.C. wrote in her statement that Smith put his hands on her. After defense counsel objected, the trial court then stated that it was naming C.C. a court's witness. Defense counsel again objected. The trial court explained that it felt that the situation was a grey area as it was not a clear case of impeachment; instead, C.C. was claiming to not remember, in part, due to her alleged alcohol consumption.

{¶9} Here, there can be no doubt that C.C.'s testimony at trial differed substantially from statements she made the night of the assault. *See Patrick,* 2022-Ohio-3470, at ¶ 7 (9th Dist.). It would also not have been unreasonable for the trial court to believe that C.C.'s testimony would be beneficial to determining the truth. *Id.* Furthermore, even if we were to conclude that the trial court abused its discretion calling C.C. as a court's witness, we cannot say that the record supports that the error was anything other than harmless. *See Walter,* 2022-Ohio-1982, ¶ 46 (9th Dist.). This is particularly the case, here, as the matter was tried to the court; "judges are presumed in a bench trial to rely only upon relevant, material, and competent evidence." *State v. Butcher,* 2025-Ohio-1124, ¶ 24 (9th Dist.), quoting *State v. Fox*, 69 Ohio St.3d 183, 189 (1994).

{¶10} Smith's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO RESOLVE THE STATE'S FAILURE TO DISCLOSE C.C.'S CRIMINAL HISTORY IN VIOLATION OF CRIM.R. 16.

{¶11} Smith argues in his second assignment of error that the trial court abused its discretion in how it handled the State's alleged violation of Crim.R. 16.

{¶12} Crim.R. 16 "regulates discovery in criminal cases." *State v. Scheidt*, 2025-Ohio-4552, ¶ 7 (9th Dist.). The purpose of the rule is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures." Crim.R. 16(A). A trial court's decision concerning an alleged discovery violation is reviewed for an abuse of discretion. *Scheidt* at ¶ 7. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219. "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that: (1) the prosecution's failure to disclose was a willful violation of the rule; (2) knowledge of the information would have benefited the accused in the preparation of the defense; and (3) the accused suffered some prejudicial effect." *State v. Jones*, 2017-Ohio-636, ¶ 30 (9th Dist.), quoting *State v. Sadeghi*, 2016-Ohio-744, ¶ 16 (9th Dist.).

{¶13} Here, after the trial, when the trial court was to return its verdict, defense counsel indicated that, in conversing with C.C., he had discovered that she had out-of-state convictions that had not been disclosed by the prosecution. *See* Crim.R. 16(B). One of these was a theft

conviction from 2014 from California. The State indicated that it was not aware C.C. had been out of state, in part because she had declined to meet with the State during the pretrial process. The trial court then stated that, "I don't know that that impacts my decision, if you need to know for the record, no matter what you would've said to [C.C.] about it." Neither side posed a remedy for the issue, and the trial court did not impose a sanction, indicating that it would "leave [the issue] to the appeals court if it's an issue." The trial court then found Smith not guilty as to the strangulation charge, but guilty as to the domestic violence charge.

{¶14} In light of the circumstances before us, we cannot say that Smith has demonstrated that the trial court abused its discretion. Here, even if we were to assume that the other elements were met, the record does not support that Smith was prejudiced; the matter was tried to the bench and, upon learning of the convictions, the trial court's response does not support that the result would have been different. *See Jones* at ¶ 30.

{¶15} Smith's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED BODY CAMERA FOOTAGE IN VIOLATION OF THE HEARSAY RULE OF EVIDENCE.

{¶16} Smith argues in his third assignment of error that the trial court abused its discretion in admitting body camera footage of hearsay statements. Specifically, Smith asserts that Officer Donald Morgan's body camera footage was erroneously admitted as the statements of C.C. were not present sense impressions or excited utterances.

{¶17} Even if this Court were to assume that these statements contained in Officer Morgan's body camera footage were inadmissible, we cannot say that the admission of Officer Morgan's body camera prejudiced Smith. *See* Crim.R. 52(A). Notably, Officer Antanazha

Stanton's body camera footage was also played at trial and admitted into evidence. Because Officer Morgan and Officer Stanton were present on the scene together, Officer Stanton's body camera footage also contains many of the same statements made by C.C., only Smith has not challenged the admission of Officer Stanton's body camera footage on appeal. Further, C.C.'s third 911 call appears to cover the same period as that of the officers' initial arrival at the scene and, thus, includes statements by C.C. that were also on Officers Morgan's and Stanton's body camera videos. Like Officer Stanton's body camera video, the admission of the 911 call is also not challenged on appeal. Accordingly, assuming without deciding that there was an error in admitting Officer Morgan's body camera footage, it is harmless in light of the unchallenged admission of Officer Stanton's body camera footage and the 911 call.

{¶18} Smith's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE STATE FAILED TO PROVE SUFFICIENT EVIDENCE FOR SMITH'S DOMESTIC VIOLENCE CONVICTION.

{¶19} Smith argues in his fourth assignment of error that the guilty verdict was not supported by sufficient evidence.

{¶20} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶21} Smith was found guilty of violating R.C. 2919.25(A), a misdemeanor of the first degree. R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm in this context "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). A family or household member includes a person living as a spouse with the offender and the "natural parent of any child of whom the offender is the other natural parent[.]" R.C. 2919.25(F)(1)(a)(i), (b).

{¶22} Shortly before 2:00 a.m. on January 11, 2025, three 911 calls were placed to the Akron dispatch. In the first call, the caller, C.C., was whispering and stated that she could not talk and that she was getting beat up. She gave an address on Liberty Drive in Akron. In the second call, C.C. just indicated that she had called about an address but did not say much else. In the third call, C.C. stated that she needed an officer at the address on Liberty Drive. Then, C.C. can be heard talking to other people. Comparing the conversation on the call with that of the conversation on the body camera videos of officers who arrived on the scene, it is apparent that some of C.C.'s conversation with arriving officers was captured on the third 911 call. Multiple Akron Police Officers responded to the call.

{¶23} Upon arriving on the scene, Officer John Schnurr spoke to Smith. Officer Schnurr described Smith as uncooperative, noting that he initially declined to provide his information. Smith also appeared to be intoxicated as he had slowed, slurred speech and glossy eyes. When Smith was placed in the cruiser and arrested, Officer Schnurr noticed that Smith also smelled of alcohol. Smith provided no explanation for C.C.'s injuries or why the police were called.

{¶24} Officer Morgan testified that when he and his partner, Officer Stanton, arrived on scene, the victim, C.C., was outside in front of the residence. Officer Stanton testified that C.C. appeared terrified. Almost immediately, C.C. acted confused as to why the police were there and indicated that she did not call them. When asked about the individual on the porch, C.C. indicated that that was her fiancé, Smith. C.C. was very focused on Smith and where he was. Officer Morgan observed that C.C. had redness in face, appeared to have been crying, and had a little bit of blood around her nose area. C.C. informed the paramedics that her nose hurt a lot. Officer Stanton also noted that there was a red mark on C.C.'s neck and chest. C.C. was adamant that someone else must have called the police and said that loudly, presumably so that Smith could hear it. C.C. admitted to drinking and Officer Morgan described her as slightly intoxicated. However, Officer Stanton did not observe any behaviors that led her to believe that C.C. was intoxicated.

{¶25} Initially, when asked about the cause of her injuries, C.C. told police that she fell off the back porch. However, when Officer Morgan investigated the area, he did not see any evidence that C.C. had slipped and fell. Officer Morgan observed that when Smith was nearby, C.C. was more tense and unwilling to elaborate. Once Smith was detained and far enough away from C.C., she became more forthcoming. C.C. told police that, "He beat my face in. He does this all the time." She became more upset as she spoke. C.C. also indicated that she was choked

and expressed concern that Smtih would retaliate against her. C.C. informed Officer Stanton that the assault happened on the couch in the residence. When Officer Stanton examined the area, she found dried blood. Both Officer Morgan's and Officer Stanton's body camera videos were admitted into evidence and portions were played during the trial.

{¶26} C.C. testified at trial and admitted to calling 911 three times that night. However, she asserted that she did not remember the content of the calls because she drank a lot that evening and had taken a Xanax. C.C. claimed to have called the police because she was frustrated and did it out of spite. C.C. testified that, that evening, she and Smith went out to a bar for Smith's birthday to watch a game. C.C. drank more than Smith. At the bar, Smith was getting a lot of phone calls because it was his birthday. When a woman called his phone, C.C. became upset and the two got into an argument. C.C. took Smith's phone and Smith left her at the bar. C.C. continued drinking and later got a ride home. Upon arriving home, C.C. was very drunk. C.C. maintained that she was always very angry and aggressive when she was drunk.

{¶27} As an explanation for the blood around her nose, C.C. asserted that she gets nosebleeds a lot. In addition, C.C. offered that her face and neck probably appeared red in the photos from that night because that happens when she drinks or when she is nervous. C.C. testified that Smith has never been the aggressor and has never scared her. C.C. also stated that Smith has never put his hands on her. In order to explain the discrepancies between her statements to police and her testimony, C.C. offered that she told the police a lot of things that were not true.

{¶28} Smith testified in his defense. That night, Smith drove himself and C.C. to the bar to watch the game and celebrate his birthday. They were both drinking at the bar. Things became tense when C.C. began accusing Smith of cheating based on all the phone calls he was getting. Because Smith found it better to leave in those situations, particularly when C.C. was drinking a

lot, Smith left C.C. at the bar and drove home. Smith indicated that C.C. got angry and belligerent when she was drinking a lot. Smith did not have any more to drink after he left the bar. C.C. had Smith's cell phone with her and C.C.'s cell phone was in Smith's car. Smith maintained that he did not see C.C. again until the police arrived. Smith had the only key to the house and C.C. did not come back into the house before the police came. Smith expressed surprise at finding the police at his door and denied assaulting or choking C.C. He asserted that C.C. frequently got bloody noses.

{¶29} Viewing the evidence in a light most favorable to the State, we cannot say that Smith has demonstrated that the finding of guilt is based upon insufficient evidence. There was evidence presented, which, if believed, demonstrated that Smith hit C.C., his fiancée, in the face, causing her nose to bleed. *See* R.C. 2919.25(A). Moreover, C.C.'s demeanor that night, as well as her statements to the police, support that Smith acted knowingly. *See id.*

{¶30} Smith's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

SMITH'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE CASE WAS FOUNDED ON UNRELIABLE TESTIMONY FROM FIRST RESPONDERS.

{¶31} Smith argues in his fifth assignment of error that his conviction was against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*.

{¶32} After a thorough review of the entire record, we cannot say that Smith has shown that his conviction is not supported by the manifest weight of the evidence. Clearly, credibility played a major role in this matter. The trial court had before it competing views of what happened: either Smith assaulted C.C. or C.C. suffered from a random nosebleed and fabricated the allegations to get back at Smith. The trial court had the opportunity to view both C.C. and Smith at trial and, through the videos, the night of the incident. "We are mindful that 'the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others.'" *State v. Singer*, 2023-Ohio-2636, ¶ 22 (9th Dist.), quoting *State v. Thomas*, 2014-Ohio-2920, ¶ 20 (9th Dist.)., quoting *State v. Ross*, 2013-Ohio-522, ¶ 16 (9th Dist.). In addition, it is well settled that "the [trier of fact] is free to believe all, part, or none of the testimony of each witness." *State v. Wilson*, 2024-Ohio-917, ¶ 17 (9th Dist.), quoting *State v. Darr*, 2018-Ohio-2548, ¶ 32 (9th Dist.). Given the record before us, we cannot say that Smith has demonstrated that the trial court lost its way in making its credibility determinations or in rendering its verdict.

{¶33} Smith's fifth assignment of error is overruled.

III.

{¶34} Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

KRISTOPHER B. IMMEL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AMANDA R. FILIPPI, Assistant Prosecuting Attorney, for Appellee.